IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
February 12, 2002 Session

## STATE OF TENNESSEE v. JAMES BRADLEY WARNER

**Direct Appeal from the Circuit Court for Bedford County**
**No. 14768     F. Lee Russell, Judge**

---

**No. M2001-01371-CCA-R3-CD - Filed March 26, 2002**

---

The defendant was convicted of theft of property over $500, after being observed leaving a Wal-Mart store with merchandise for which he had not paid. In his appeal, he alleges that the proof of the value of the items was insufficient and that the trial court erred in ruling that certain of his prior convictions could be used for impeachment and in sentencing. We affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

ALAN E. GLENN, J., delivered the opinion of the court, in which JOSEPH M. TIPTON and JOHN EVERETT WILLIAMS, JJ., joined.

Merrilyn Feirman, Nashville, Tennessee (on appeal); Donna L. Hargrove, District Public Defender; and Andrew Jackson Dearing, III, Assistant District Public Defender (at trial and on appeal), for the appellant, James Bradley Warner.

Paul G. Summers, Attorney General and Reporter; David H. Findley, Assistant Attorney General; William Michael McCown, District Attorney General; and Michael D. Randles, Assistant District Attorney General, for the appellee, State of Tennessee.

### OPINION

The defendant was convicted of theft of property over $500, a Class E felony, and sentenced to confinement for four years. In his appeal, he presents the following issues:

> I. Whether the evidence at trial was insufficient to support Defendant's conviction of theft of property over $500.00.
>
> II. Whether the Trial Court erred in denying Defendant's Motion to Exclude his Prior Convictions, should the Defendant wish to testify.

III. Whether the Trial Court erred by imposing the maximum sentence.

The State's first witness, Matt Ledbetter, testified that formerly he had worked at the Wal-Mart in Shelbyville in the electronics department. He explained that compact discs ("CDs") offered for sale by Wal-Mart bore a price tag showing the price to the customer. He said that the store sold only new CDs and that Wal-Mart discounted its CD prices to meet those of its competitors. Prices were set at the Wal-Mart home office in Bentonville, Arkansas.

The next witness was Melissa Stacey, who had worked at Wal-Mart a total of five years. She testified that she observed the defendant placing two or three CDs at a time into a green Rubbermaid tote, which was in his shopping cart. He filled the tote with CDs, placed the lid on the tote, and pushed the cart from the electronics department out the front door of the Wal-Mart store without stopping to pay for the items. Stacey identified herself to the defendant, and he followed her back into the store. He admitted that he had taken the items without paying. She testified that the defendant had taken forty-five CDs and one Rubbermaid tote, with a total value of $722.83. She calculated this price by adding the prices on the CDs, in addition to that on the Rubbermaid tote which was priced at $3.97. The defendant had taken from the store twenty CDs with price tags of $15.88 each, ten CDs with $17.88 price tags, eight CDs with price tags of $14.88, and three CDs with $12.88 price tags. In addition, he took three CDs with price tags, respectively, of $20.96, $25.88, and $7.98. One CD in the Rubbermaid tote also taken by the defendant did not bear a price tag, but the scanner showed a price of $9.96. Subsequently, these items had been returned to stock to be sold.

Vance Cobb, the Wal-Mart assistant manager, testified that he assisted in adding the costs of the CDs and said that CD prices were discounted when necessary to respond to the advertised prices of a competitor.

## ANALYSIS

### I. Sufficiency of the Evidence

The defendant's first assignment of error is the claim that the State did not sufficiently establish the value of the CDs removed from Wal-Mart by the defendant. This claim is based upon the assertion that "two out of the three[] Walmart [sic] employees admitted that the price on the price tags are routinely discounted to meet their competitors['] advertised prices." The State counters that there was no proof at the trial that the items were for sale for other than the price marked on the price tag of each.

In considering this issue, we apply the familiar rule that where sufficiency of the convicting evidence is challenged, the relevant question of the reviewing court is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the offense charged beyond a reasonable doubt." Jackson v. Virginia, 443

U.S. 307, 319, 99 S. Ct. 2781, 2789, 61 L. Ed. 2d 560 (1979).  See also State v. Evans, 838 S.W.2d 185, 190-92 (Tenn. 1992); State v. Anderson, 835 S.W.2d 600, 604 (Tenn. Crim. App. 1992); Tenn. R. App. P. 13(e) ("Findings of guilt in criminal actions whether by the trial court or jury shall be set aside if the evidence is insufficient to support the findings by the trier of fact of guilt beyond a reasonable doubt.").  All questions involving the credibility of witnesses, the weight and value to be given the evidence, and all factual issues are resolved by the trier of fact.  See State v. Pappas, 754 S.W.2d 620, 623 (Tenn. Crim. App. 1987).  "A guilty verdict by the jury, approved by the trial judge, accredits the testimony of the witnesses for the State and resolves all conflicts in favor of the theory of the State."  State v. Grace, 493 S.W.2d 474, 476 (Tenn. 1973).  Our supreme court stated the rationale for this rule:

> This well-settled rule rests on a sound foundation.  The trial judge and the jury see the witnesses face to face, hear their testimony and observe their demeanor on the stand.  Thus the trial judge and jury are the primary instrumentality of justice to determine the weight and credibility to be given to the testimony of witnesses.  In the trial forum alone is there human atmosphere and the totality of the evidence cannot be reproduced with a written record in this Court.

Bolin v. State, 219 Tenn. 4, 11, 405 S.W.2d 768, 771 (1966) (citing Carroll v. State, 212 Tenn. 464, 370 S.W.2d 523 (1963)).  A jury conviction removes the presumption of innocence with which a defendant is initially cloaked and replaces it with one of guilt, so that on appeal, a convicted defendant has the burden of demonstrating that the evidence is insufficient.  See State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982).

The defendant and the State both cite this court's opinion in Norris v. State, 475 S.W.2d 553 (Tenn. Crim. App. 1971), in support of their respective positions as to the sufficiency of proof of the value of the items removed from Wal-Mart.  In pertinent part, this court stated in Norris:

> We hold that in a shoplifting case evidence that merchandise was displayed for regular sale at a marked price representing its retail price is sufficient circumstantial evidence of value, where totally uncontradicted, to support a conviction grounded upon the marked price as its value.  That the television set was displayed for sale over a period of time with a certain price tag upon it is not hearsay, but fact; and is evidence that the tag reflected its retail value.

Id. at 555-56.

Although the defendant is correct in his assertion that Wal-Mart employees testified their employer matches prices of its competitors, the fact remains that there was no proof that any of the items which the defendant removed from the store were offered for any price other than that set out on the price tag affixed to each.  Additionally, we note that for the combined value of the items to

-3-

drop below $500, it would be necessary that the total markdown be in excess of 33%, a very substantial discount. Other than the general testimony that Wal-Mart marks prices to match the competition, there is no basis for our making the dual assumptions that Wal-Mart marked down the CDs in question and that the combined discounts were at least 33% of the total of the marked prices. Both assumptions would be required before we could conclude that the State did not sufficiently prove that the value of the items exceeded $500. Since we can make neither assumption, this assignment is without merit.

## II. Motion in Limine as to Defendant's Prior Convictions

After the State had rested, the trial court took up the State's notice, filed pursuant to Tennessee Rule of Criminal Procedure 609, of its intent to impeach the defendant with certain of his prior convictions. The notice sets out eight separate convictions or sets of convictions, consisting of one conviction for fraudulent use of a credit card; four convictions for theft; two convictions for forgery; and what appear to be approximately seventy convictions for passing worthless checks. Defense counsel argued that none of the convictions could be used to impeach the defendant if he testified because of their similarity to the offense for which he was being tried. As to this issue, the trial court ruled:

> All right. I am going to agree with you on the theft charges in Dyer County, which is Number 2. I am going to agree with you on the theft charges in Dyer County again, which is Number 3. I am going to agree with you on the Dyersburg Municipal Court charges of theft in Number 6. And I am going to agree with you on Number 7, Dyersburg Municipal, theft again.
>
> I find, frankly, that they are all probative – in fact, highly probative. But those that are actually theft, the same offense charged here, I think the prejudicial value or the prejudicial risk would far outweigh the probative value.
>
> However, on the fraudulent use of a credit card and on the P.W.C.'s and on the forgeries, they are highly probative, and it's a different offense. I don't think there is any danger here of the jury using the two. And I don't think they are particularly prejudicial or prejudicial at all. So, I am going to allow the State to introduce those.

The defendant argues on appeal that the trial court erred in concluding that the defendant's prior convictions for fraudulent use of a credit card, passing worthless checks, and forgery could be used to impeach him if he testified.

Tennessee Rule of Evidence 609(a)(3) sets out the procedures for determining whether prior convictions may be used for impeachment:

If the witness to be impeached is the accused in a criminal prosecution, the State must give the accused reasonable written notice of the impeaching conviction before trial, and the court upon request must determine that the conviction's probative value on credibility outweighs its unfair prejudicial effect on the substantive issues. The court may rule on the admissibility of such proof prior to the trial but in any event shall rule prior to the testimony of the accused. If the court makes a final determination that such proof is admissible for impeachment purposes, the accused need not actually testify at the trial to later challenge the propriety of the determination.

In the instant case, the trial court, following the hearing required by Rule 609, concluded that while the prejudicial value of the four prior theft convictions outweighed their probative value and, thus, prevented their being used for impeachment purposes, the reverse was true for the convictions for fraudulent use of a credit card, forgery, and passing worthless checks. The standard of review which we apply to this matter is to determine whether the trial court abused its discretion in concluding that certain of the defendant's convictions could be used for impeachment purposes. State v. Blanton, 926 S.W.2d 953, 960 (Tenn. Crim. App. 1996).

Our supreme court instructed in State v. Mixon, 983 S.W.2d 661, 674 (Tenn. 1999), that "trial courts should carefully balance the probative value of the impeaching conviction on credibility against its unfairly prejudicial effect on substantive issues." In the instant case, the trial court did make such an analysis, determining that convictions for offenses identical to that for which the defendant was being tried could not be utilized because of their prejudicial effect. For us to conclude that the trial court then erred in determining that the probative value of the convictions for forgery, fraudulent use of a credit card, and passing worthless checks outweighed their prejudicial effect, we would have to determine that a defendant convicted of one of the panoply of theft offenses was immunized from impeachment when being tried for another theft offense. However, we believe the trial court acted properly in allowing the use of the particular convictions, given their relevance to credibility and their lack of similarity to the offense charged. Moreover, it is difficult to envision how this ruling could have prejudiced the defendant. On cross-examination, Melissa Stacey gave an affirmative answer to the following question by defense counsel regarding her confronting the defendant in the Wal-Mart parking lot: "And I think he just willingly – he admitted that, yeah, I goofed up, I stole these things, didn't he?" At the hearing on the motion for new trial, defense counsel advised the court:

Judge, this case, as the Court well remembers, in that Mr. Warner admitted that he was guilty of the offense of theft. And the only issue left for the jury to decide was the value of the property, whether it was less than or more than $500.

-5-

Thus, this matter is in sharp contrast with <u>Mixon</u>, in which the conviction was reversed because the error in allowing the defendant, subsequently convicted of attempted rape, attempted incest, and sexual battery of his daughter, was impeached as to a prior sexual battery conviction. In <u>Mixon</u>, the evidence was not overwhelming, and the State emphasized the prior conviction to the jury. By contrast, the defendant in the instant case contested only the value of the items he took from Wal-Mart, not the fact of the taking. Thus, it is difficult to envision what the defendant could have testified to, other than value, and difficult, as well, to imagine what his testimony could have been in that regard, given the fact he admitted, through his attorney, that he was caught stealing from Wal-Mart. Accordingly, we conclude that even if the trial court did err, as the defendant urges, the error was harmless.

This assignment is without merit.

### III. Sentencing

The defendant was sentenced to four years confinement as a Range II offender, and the court ordered that his sentence be served consecutively to previously imposed sentences. He argues on appeal that the trial court erred both in sentencing him to the maximum punishment and in ordering consecutive sentencing.

When an accused challenges the length and manner of service of a sentence, it is the duty of this court to conduct a *de novo* review on the record with a presumption that "the determinations made by the court from which the appeal is taken are correct." Tenn. Code Ann. § 40-35-401(d). This presumption is "conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." <u>State v. Ashby</u>, 823 S.W.2d 166, 169 (Tenn. 1991). The presumption does not apply to the legal conclusions reached by the trial court in sentencing the accused or to the determinations made by the trial court which are predicated upon uncontroverted facts. <u>State v. Butler</u>, 900 S.W.2d 305, 311 (Tenn. Crim. App. 1994); <u>State v. Smith</u>, 891 S.W.2d 922, 929 (Tenn. Crim. App. 1994); <u>State v. Bonestel</u>, 871 S.W.2d 163, 166 (Tenn. Crim. App. 1993). However, this court is required to give great weight to the trial court's determination of controverted facts as the trial court's determination of these facts is predicated upon the witnesses' demeanor and appearance when testifying.

In conducting a *de novo* review of a sentence, this court must consider (a) any evidence received at the trial and/or sentencing hearing, (b) the presentence report, (c) the principles of sentencing, (d) the arguments of counsel relative to sentencing alternatives, (e) the nature and characteristics of the offense, (f) any mitigating or enhancement factors, (g) any statements made by the accused in his own behalf, and (h) the accused's potential or lack of potential for rehabilitation or treatment. Tenn. Code Ann. §§ 40-35-103 and -210; <u>State v. Scott</u>, 735 S.W.2d 825, 829 (Tenn. Crim. App. 1987).

The party challenging the sentences imposed by the trial court has the burden of establishing that the sentence is erroneous. Tenn. Code Ann. § 40-35-401, Sentencing Commission Cmts.;

-6-

<u>Ashby</u>, 823 S.W.2d at 169.  In this case, the defendant has the burden of illustrating the sentence imposed by the trial court is erroneous.

The trial court made the following determinations in setting the defendant's sentence at four years:

> So, we begin with the statutory presumption in favor of the 2 year sentence.  In looking at this case, it appears to me there are some enhancement factors present.  Certainly, he has a very extensive previous history of criminal convictions.  Those recited in the presentence report and discussed at length by us in our discussion on the range.  So, I find that enhancing factor Number 1 is present.  He does have a previous history of unwillingness to comply with the conditions of a sentence involving release.  So, I find that enhancing factor Number 8 [is] present.  And as to enhancing factor Number 13, it does appear that this felony was committed while on determinate release and state probation for felony convictions.  So, I do enhance up to the maximum in this range of 4 years.
>
> As far as mitigating factors are concerned, it is true that there was – that mitigating factor Number 1 is present, that what was done, the taking these C.D.'s did not cause or threaten serious bodily harm.  I do not give that substantial weight however.  It is the nature of this particular offense.  It is not going to cause or threaten serious bodily harm.  So, I would not find that to be present.
>
> I don't find the fact that he has a drug problem to be a mitigating factor here.  I don't find any other mitigating factors present other than Number 1.  So, the sentence will be 4 years.

The defendant's specific complaint as to the length of his sentence is that "the trial court erred by failing to find [his] drug addiction to be a mitigating factor."

Tennessee Code Annotated Section 40-35-113(8) provides that a mitigating factor may be the fact that "[t]he defendant was suffering from a mental or physical condition that significantly reduced the defendant's culpability for the offense; however, the voluntary use of intoxicants does not fall within the purview of this factor."  Previously, this court has determined that Section 40-35-113(8) does not permit drug addiction to be recognized as a "mental or physical condition" and, thus, a mitigating factor for sentencing purposes:

> We find that Tennessee Code Annotated Section 40-35-113(8), the mitigating factor concerning the appellant's mental or physical condition, does not apply.  The appellant asserts that his drug

addiction is a physical or mental condition as contemplated by the statute which reduces his culpability, but the statute specifically provides that voluntary use of intoxicants is not included in this mitigating factor. T.C.A. § 40-35-113(8) (1990).

State v. Black, 924 S.W.2d 912, 917 (Tenn. Crim. App. 1995). Accordingly, we conclude that the trial court was correct in determining that voluntary drug addiction could not be a mitigating factor for purposes of calculating the sentence.

The defendant also argues on appeal that the trial court should not have ordered the sentence imposed for the instant offense to be served consecutively to sentences previously imposed. According to the judgment, the sentence imposed in this matter is to be served consecutively to those imposed in Dyer County Case No. C99-307, Obion County Case No. 9204, and Bedford County Case No. 30191-116-213. As to these sentences, it appears from the presentence report that the Dyer County sentence had been imposed on October 26, 1999, and then suspended, the suspension being revoked on April 3, 2001; the Bedford County sentence had been imposed on October 17, 2000, the conviction being for theft; and the Obion County sentence had been imposed on August 11, 1999, with the suspension revoked on February 23, 2001. As for its reasons for imposing consecutive sentencing, the trial court stated:

> The next question is whether or not he would serve that consecutively or concurrently with, I believe he has sentences – although there are holds out of two states and I think at least three counties, we are talking about – the only sentence that we would be talking about being consecutive to or concurrent with is the sentence that he has – that he's on parole for right now, is that right? Okay. Well, with his extensive criminal record, it does not appear to me that it would be appropriate to make this sentence concurrent with the sentence on which he is on probation. I don't think under statute that's proper anyway.

> As far as alternative sentencing, to say the very least, his potential for rehabilitation looks very, very limited to me. He has an enormous number of offenses beginning in '99 and coming forward. And I think there would be a very serious risk of his committing another crime while on probation. In fact, he did it when he committed this crime. So, I don't believe he is a good candidate for alternative sentencing. So, he'll be sentenced to 4 years.

> MR. DEARING: Was that concurrent with his current parole sentence?

-8-

THE COURT: That's consecutive to his parole sentence. All right. Anything else on this one?

GEN. RANDLES: I think he was technically on probation. So, you mean the West Tennessee Dyer County and the Obion County sentences?

MR. DEARING: It's a probation sentence.

GEN. RANDLES: He has sentences out of both of those counties consecutive to that.

THE COURT: Both of those counties, right.

GEN. RANDLES: There was also a Bedford County sentence, a misdemeanor sentence where he had gotten like 40 days, time served.

THE COURT: Consecutive to all other sentences he has.

As a general rule, consecutive sentences are imposed at the discretion of the trial court upon its finding of one or more of the following statutory criteria:

> (1) The defendant is a professional criminal who has knowingly devoted such defendant's life to criminal acts as a major source of livelihood;
>
> (2) The defendant is an offender whose record of criminal activity is extensive;
>
> (3) The defendant is a dangerous mentally abnormal person so declared by a competent psychiatrist who concludes as a result of an investigation prior to sentencing that the defendant's criminal conduct has been characterized by a pattern of repetitive or compulsive behavior with heedless indifference to consequences;
>
> (4) The defendant is a dangerous offender whose behavior indicates little or no regard for human life, and no hesitation about committing a crime in which the risk to human life is high;
>
> (5) The defendant is convicted of two (2) or more statutory offenses involving sexual abuse of a minor with consideration of the aggravating circumstances arising from the relationship between the defendant and victim or victims, the time span of defendant's

undetected sexual activity, the nature and scope of the sexual acts and the extent of the residual, physical and mental damage to the victim or victims;

    (6) The defendant is sentenced for an offense committed while on probation; or

    (7) The defendant is sentenced for criminal contempt.

Tenn. Code Ann. § 40-35-115(b) (1997). These criteria are stated in the alternative; therefore, only one need exist to support the appropriateness of consecutive sentencing.

Here, the trial court found that "with his extensive criminal record, it does not appear to me that it would be appropriate to make this sentence concurrent with the sentence on which he is on probation." Although the trial court may have also believed that consecutive sentencing was required because the defendant was on probation at the time he committed the instant offense, the fact remains that one of the bases for consecutive sentencing was the defendant's extensive criminal record. That is a statutory basis for ordering consecutive sentencing, and the defendant certainly has a very lengthy record of convictions. Accordingly, we conclude that the record supports the trial court's order that the sentence imposed in the instant case be served consecutively to those imposed previously.

## CONCLUSION

Based upon the foregoing reasoning and authorities, we affirm the judgment of the trial court.

_____
ALAN E. GLENN, JUDGE

-10-